# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRUMAN JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-05-469-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Truman Johnson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The court may not reweigh the evidence nor substitute its discretion for that of the agency.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that claimant establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See id*. §§ 404.1521, 416.921.  If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work.  If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account his age, education, work experience, and RFC–can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on May 16, 1964, and was 50 years old at the time of the administrative hearing. He has a high school education and previously worked as a maintenance man, housekeeper, and industrial cleaner. The claimant alleges he has been unable to work since September 15, 2001, because of rheumatoid arthritis, degenerative arthritis in the right knee, depression, and anxiety.

**Procedural History**

On February 4, 2003, the claimant protectively filed an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. The application was denied. After a hearing on December 2, 2004, ALJ Larry Weber found that the claimant was not disabled in a decision dated February 24, 2005. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; perform simple, routine job tasks; and interact with coworkers and supervisors regarding work matters on a superficial level (Tr.

24). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and national economies he could perform, *e.g.*, production occupations such as gluer and blow off worker (Tr. 26).

**Review**

The claimant contends that the ALJ erred: (i) by failing to contact his physician to obtain an X-ray report; (ii) by failing to discuss significantly probative medical evidence regarding his knee impairment; and, (iii) by improperly analyzing his credibility. In essence, the claimant argues that the ALJ improperly considered the claimant's credibility with regard to his knee pain and instability because he failed to obtain critical medical evidence from the claimant's treating physician and failed to discuss probative evidence from the record. The Court finds this argument persuasive.

The record reveals that the claimant was diagnosed with arthritis as early as August 2002. At that appointment, the claimant complained of arthritis pain in his right knee, and he was prescribed a knee brace (Tr. 185). In January 2004, the claimant continued to complain of problems with his knee and indicated that for the last three days he had been suffering from pain and swelling in his knee and pain when walking. Examination revealed that although the claimant's knee was tender, he had good flexion and extension (Tr. 307). An X ray of the knees was ordered, and on the request sheet, a handwritten note indicated the claimant had degenerative joint disease (Tr. 312), and it was noted in treatment notes that the X rays showed a narrowed medial compartment (Tr. 307). The claimant continued to

suffer from knee pain in March 2004 and was again noted to have degenerative joint disease of the right knee (Tr. 305). He received the same diagnosis in August 2004 and again in November 2004 (Tr. 300, 303). At the administrative hearing, the claimant testified that he had been prescribed a brace for his right knee (Tr. 453), which provided stability and kept him from falling. It did not help with pain, and he was told not to wear it all the time because it could cause problems with his circulation (Tr. 473). The claimant testified he wore the brace when he took a walk in the evening and when he knew he had to walk "a bit." (Tr. 474).

The ALJ determined that the claimant's arthritis, depression, and anxiety were severe impairments (Tr. 22). However, he found the claimant's complaints of knee pain to be "less than fully credible" because the "[r]ecent onset of knee pain and x-rays of the knees showing 'djd' [were] the only objective medical signs of degenerative joint disease of the knees." (Tr. 20). He further indicated: (i) that the claimant's knees had not required "surgery or more aggressive medical treatment[;]" (ii) that "radiographs show[ed] only the earliest signs of degenerative changes[;]" (iii) that "the claimant [was] able to ambulate without assistive device and there [were] no signs of weakness or instability[;]" and, (iv) that "[t]here [were] no signs of joint deformity or swelling." (Tr. 23-24).

Deference must be given to an ALJ's credibility determination unless the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d at 801. An ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].

The ALJ's analysis of the claimant's credibility with regard to his knee pain and instability clearly fell below the foregoing standards. First, the ALJ noted in the decision that the claimant initially reported knee pain in January 2004 and that it had only persisted for three days (Tr. 19). However, the ALJ did not discuss evidence in the record indicating that the claimant's knee pain actually began much earlier than January 2004. The claimant had arthritis pain in the knees in August 2002, and just as he testified at the hearing, he was prescribed a knee brace (Tr. 185, 453). The ALJ should have considered this probative evidence because it could have made a difference in his determination that the claimant's knee pain was of recent onset and that the claimant did not use an assistive device or suffer from any instability in his knees. *See Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Second, the actual X-ray report of the claimant's knees was not in the record. In his decision, it appears that the ALJ indeed thought the X-ray report was in the record, as he noted that "the report of x-ray included only the following hand-written notation, 'djd.' No specific findings were reported [.]" (Tr. 19-20). However, what appeared in the record was a request form which indicated the procedure, requesting physician, the date and time ordered

and the date the procedure was desired, the clinical history of bilateral knee pain, and a notation of "djd." (Tr. 312). The Commissioner argues that although the ALJ "has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing[,]" *see Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) [citations omitted], the ALJ is "entitled to rely on the claimant's counsel . . . to identify the issue or issues requiring further development." *See Hawkins*, 113 F.3d at 1167-68, *citing Glass v. Shalala*, 43 F.3d 1392, 1394-96 (10th Cir. 1994). He further argues that the actual X-ray report was not necessary because of the notation of "djd" and the notation of a narrowed medial compartment in the treatment notes by the claimant's physician. The hearing transcript, however, reveals that both the claimant's attorney and the ALJ appeared to believe that the report was in the record, so it was not identified to the ALJ as missing (Tr. 447). Further, although the treatment note included the finding of a narrowed medial compartment from the X-ray report, the ALJ did not mention the finding in his decision, so it is impossible to know if he considered it. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2000) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). Because the findings on the X-ray report could have some bearing on the level of credibility the ALJ afforded to the claimant's complaints of knee pain and instability, the Court finds that the ALJ should attempt to retrieve the actual X-ray report from the claimant's treating physician Dr. Jerald Gilbert, M.D.

Further, although not raised as an error by the claimant, the Court finds that the ALJ failed to include all of the claimant's mental functional limitations in the RFC. With regard to the claimant's mental limitations, the ALJ agreed with the agency psychologists that the claimant could only "carry out simple one step instructions, and relate to coworkers and supervisors regarding work matters on a superficial basis[.]" (Tr. 24). However, the agency psychologists also determined the claimant was markedly limited in the ability to interact appropriately with the general public (Tr. 271-73). The ALJ did not mention in his decision whether he accepted or rejected such a limitation, and he may not "pick and choose" limitations from the agency physicians' reports. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. This was particularly problematic because the ALJ did not include a limitation on the claimant's inability to interact with the public in any of the hypothetical questions presented to the vocational expert. *See* Tr. 480-89.

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper determination as to the claimant's credibility with regard to his knee pain and instability and as to the claimant's mental RFC. On remand, the ALJ should: (i) contact Dr. Gilbert and obtain the X-ray report of the claimant's knees; (ii) consider the evidence that the claimant's knee pain and instability was not of recent origin; (iii) reconsider

the limitations caused by the claimant's mental impairment; and, (iv) then determine whether the claimant's knee pain and mental impairment result in further functional limitations. If so, the ALJ must include these limitations in the claimant's RFC and then determine what work, if any, the claimant can perform and whether he is disabled.

**Conclusion**

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 24th day of September, 2007.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**